Good morning. May it please the Court, my name is Michael Fortas and I represent the appellants in this matter, Dow Chemical, Shell Oil, and Shell Chemical. This case involves an attempt by these U.S. companies to seek refuge from a Nicaraguan legal system that is subject to substantial corruption and which has enacted a law specifically directed against these companies, also the law subject to the Franco Appeal, which has now been disposed of, called Law 364. They gathered these companies originally wanted to be in Nicaragua. That's correct, Your Honor. Ten years ago, before, long before Law 364 was enacted, and when the Nicaraguan legal landscape looked substantially different, there were successful Was that when Somoza was in power that you wanted to be in Nicaragua? I believe the answer, I understand the import of the question. I believe the answer is yes, but I'm not sure. In any event, Your Honor, at that point in time, the legal landscape looked substantially different and Law 364 certainly wasn't on the books. In fact, Law 364, by all appearances, is a reaction to those successful form nonconvenience motions. Pursuant to Law 364, 299 of the roughly 1,000 appellees in this case have obtained judgments in excess of a quarter of a million dollars, and in addition, the Franco case, which the Court heard previously this morning, was subject to a judgment of well over $400 million. The exposure runs in the billions of dollars, and the appellees in the case have avoided any statement as to whether, if this case is affirmed on appeal, whether we will be subjected to successive enforcement actions all over the country on a piecemeal basis by the appellees to enforce the judgments that are subject to the case that we brought in the lower court. That issue, of course, whether they intend to bring such enforcement actions, would be directly relevant to the alternative ground for appeal on rightness that is raised by appellees. Our complaint alleges that the draconian provisions of Law 364, together with the systematic failures of the Nicaraguan legal system, which have been well documented by the State Department and others, compel the conclusion that any judgment that would be rendered in Nicaragua would be unenforceable in the United States. We have also sought in that complaint a declaration with respect to liability for the underlying claims by the Nicaraguans. There's another case with other parties that has breached the merits of these questions, right? One or two. Yes, Your Honor. One or two, are there? One other case, the Dole case, which was brought by Dole, reached the merits of these claims, that is, they were dismissed as not right, in a slightly different factual circumstance I'm happy to comment on, and there are also some additional claims in Dole. So the very same one. Wasn't there a Schell case that also reached the merits of the claim? No, Your Honor. There is a pending case involving Schell, Franco II, which right now is before Judge Minella, which will address the merits of the enforceability of Law 364. I see. Now, that grows out of Franco I and was brought as a result of the proceedings in Franco I. So that case remains pending before Judge Minella. I see. In the Dole case, Judge Minella dismissed the lawsuit, and as relevant here with respect to the declaratory judgment count concerning Law 364, essentially held that the case wasn't right. Now, the case was substantially different there. There were not pled judgments that had already been entered in the prior Dole case. That is, there were not allegations that judgments had been entered that were subject to that complaint. And in addition, since that time, there have been additional judgments that have been entered. So we think the factual circumstances in the Dole case that did reach this question of declaratory relief on the merits are substantially different. That is the case where roughly 450 of the appellees here appeared, waived personal jurisdiction, and litigated their defenses on the merits, which is one of our arguments in favor of jurisdiction, at least over those individuals in this case. The district court dismissed the complaint solely on the basis of lack of personal jurisdiction. That's a judgment obviously subject to this Court's de novo review. We urge two grounds for reversal here, and we believe the district court erred in two different respects. First, by affirmatively electing under Law 364 to litigate their claims in Nicaragua under a law that expressly contemplated that the defendants in those actions might seek to return to the United States and seek adjudication in the United States, we believe those litigants impliedly consented to jurisdiction in the United States if we exercised our – really our only protection under that law, to try to opt out of the legal system in Nicaragua and get a hearing here, which that law contemplated. But the plaintiffs didn't do anything. There was a statute which basically says that if somebody sues you, then you have to subject yourself to jurisdiction. But it doesn't say that somebody has to sue you or that you have to – can sue them. The statute – the statute is phrased in much more, on its face, mandatory language than that. The statute says if you are sued. Right. If you are sued. And we were sued in Nicaragua. I mean, there's no doubt that these claims arise out of lawsuits that were filed against us in Nicaragua. If you were sued in the United States. No. The statute speaks to a suit brought against us in Nicaragua because it obligates us to submit a $100,000 bond in Nicaragua if we elect to. If there's a free suit. I was referring to the part of the statute that deals with the jurisdiction in the United States. I'm sorry. I didn't catch the first part of the question, Your Honor. The – I was referring to the part of the statute that requires you to submit to jurisdiction in the United States. Yes. That is. That is. Not the if with regard to Nicaragua. I understand. And I think the plain language of the statute says if we elect not to pay the deposit in Nicaragua, we must submit ourselves to the jurisdiction of the courts of the United States. And that is the phraseology of the statute. It says you must submit the matter. But what does that have to do with the plaintiffs? That says that if you don't want to be sued in Nicaragua, you have to agree to be sued in the United States. But it doesn't tell the plaintiffs what they have to do. Your Honor, I think if there's an obligation imposed upon us, the flip side of that coin is we have a right to come to the United States, and they are on fair notice of that, to vindicate that right. It says if they sue you in the United States, then you'll agree to jurisdiction. The statute doesn't say that, Your Honor. It doesn't say either of the things. We're trying to interpret the statute. All the statute says is that you have to subject yourself to jurisdiction in the United States. Yes, Your Honor. And we – Okay. So then you draw the inference from that that that means the plaintiffs have to come sue you in the United States. Well, Your Honor, the reason for the inference being drawn – well, we draw the inference that we have a right to submit to the United States courts and to compel them to the jurisdiction of the courts. And here's the reason for that inference. When these lawsuits – and this is a record in the – in the excerpts of the record. When these initial lawsuits that are subject to this case were filed, we attempted to exercise our right to opt out of the proceedings in Nicaragua. That is, we filed pleadings that says – that said we are not going to deposit the $100,000 that this Court requires if we want to litigate here. And instead, we placed this Court on notice that we are prepared to submit to the waiving form nonconvenience for resolution of the dispute. We attempted to exercise the rights under Article VII that the Supreme Court of Nicaragua said are effective. Those efforts were completely turned back. We have had judgments of over a quarter of a million dollars in the cases that are at issue here and are – That's a different issue. I mean, the fact is that those judgments may be improper judgments, but that doesn't have anything to do with the question of whether you can come here and try to sue people who haven't sued you. Well, we have been sued, obviously, by these individuals in Nicaragua. And the issue is, does the district court fairly have the ability under the Due Process Clause to exercise jurisdiction under those people here? And there's no doubt we've been sued by all of them. And there's no doubt – it's uncontroverted – that we've been sued by them under a statute that, at least on its face, says we can opt out of the proceedings in Nicaragua as long as we're willing to submit to the courts of the United States. As soon as they seek to enforce a judgment against you in the United States, you can accomplish everything you're trying to do in this case, right? Well, as to those particular litigants, and that's exactly what Franco – what the Franco I case was all about, that it was subject to the last appeal. That case has been now dismissed, and the Court never reached the merits. In Franco II, Judge Minella may be reaching the merits of enforceability. The problem is, it's only as to those individual litigants. So we are subject to repeated and thousands of lawsuits in Nicaragua. But you're right to say that it's these individual litigants that have agreed to be sued here. In other words, if you can't deal with these individual litigants, you're no place because – That's very true. In fact, we're in a complete catch-22 if we can't deal here with those individual litigants, because we can't opt out in Nicaragua. The courts have not recognized our efforts to do that. But I don't understand the problem. Any time anyone tries to enforce a judgment against you, you can raise these issues. If those – if there's an effort to enforce those judgments in the United States case – And if there's no effort to enforce the judgments, what's the problem? Well, I think I'm willing to hazard a guess that there will be an effort to enforce these judgments. There have been efforts in Venezuela recently to enforce some judgments that have been obtained in Nicaragua. There haven't been any in the United States since we filed this case. We suspect because it puts the lie to some degree to the claim that we don't want to be here. If there's an effort to enforce a judgment here. Well, okay. So if they don't enforce the judgments here because you filed this case, you've accomplished your purpose. If this case – if they had made a representation to this Court on appeal that there was an effort to enforce a judgment here, that would be one thing. In fact, they made a representation to that effect in the district court. In this court, they haven't said anything like that. They've said whether or not we're going to come here to seek to enforce judgments is irrelevant to this appeal. And we believe it's very relevant to the appeal. And we believe – Well, if they come to seek judgments, then the question of personal jurisdiction will be solved. It's moved, obviously. Yes, Your Honor. Until they seek to enforce judgments, you don't have an immediate practical problem. So it's just very baffling about why we're worried about this at this point. Well, I think, Your Honor, the – I think the record makes pretty clear why we have a practical problem. We have already had hundreds of millions of dollars of ostensible judgments entered against us in Nicaragua. We are under pain of potential enforcement. But what you're trying to do is to sue some individuals who are in Nicaragua. They're not here. They haven't come here, and they've never been here. And this is what I meant before was that you have to establish the due process consequences with regard to those individuals, even if your interests are broader. Quite right. It doesn't matter that your interests are broader for present purposes. That's quite right, Your Honor. And therefore, you get yourself into a problem. And this – you can tell us why these people, as opposed to the world in general, have to show up here to litigate. And here's the reason I think that's the case, that Law 364, we analogize it to a form selection clause. And that, admittedly, isn't a perfect analogy. But that law, plainly on its face, contemplates that we may tell the Nicaraguan courts, we don't want to be in Nicaragua. We are prepared to submit to the United States court's jurisdiction, and something, in fact, we attempted to do to no effect in Nicaragua. We still get judgment sent against us. When that – given that law exists, given its clear statements, we believe it is appropriate to conclude that a litigant who seeks to avail itself of the benefits of that law and file suit in Nicaragua, taking advantage of the considerable, and we believe unconstitutional under the United States laws, protections that that law would afford them, tacitly says if the defendant elects its sole remedy under that law to return – to seek to return to the United States, we will come to the United States and litigate these cases. And if you think about the context in which the law was enacted, it was really in reaction to the forum nonconvenience ruling in Delgado and in other cases where the Nicaraguan legislature said, fine, you're either going to come here and litigate under our rules, or if you don't want to be under our rules, you're going to have to come back to the United States and waive your forum nonconvenience defenses. So we tried to do that. We, in fact, said we will not raise forum nonconvenience. We'd like to litigate the merits of the underlying cases here. But we believe it is – it is consistent with due process, consistent with the Supreme Court's decision in Resowitz to say these people chose the benefits of the law. They were on fair, clear notice that if they did so, we may seek to return to the United States. And that is a tacit consent to return to the United States if we so choose to exercise our limited rights and – and submit themselves to jurisdiction here. So that's the due process basis on which we believe that we are entitled to proceed against the full 1,000 or so plaintiffs in this case – or defendants in this case. In addition to – with respect to those – the entire group of defendants, we do have a group of over 400 of them who chose to litigate in the related Dole case. They were sued by Dole in that case. They appeared, they waived their forum nonconvenience defenses, and they sought and obtained, as you had observed, Your Honor, a judgment on the merits in the Dole case. We believe that those affirmative actions constitute essentially transaction submission to this Court's – to the district court's jurisdiction for a dispute that arises out of identical factual circumstances. How is it identical factual circumstances? The litigants were – The case wasn't against you, is that right? No. No, it was not. But the litigants – You weren't a party in the case. I'm sorry? Your client was not a party in that case. We were not a party in the case. We were – the plaintiffs were obviously the same. The issue was identical. It was the enforceability of judgments under Law 364, as well as the underlying court issues. So those issues were identical. There's no dispute that those issues were identical. There's no claim here that the issues weren't identical and that they don't grow out of the same operative facts. So we believe that the act of submitting to the Court's jurisdiction by those plaintiffs – Frankly, I can sort of see the glimmer of a theory with regard to a minimum context specific jurisdiction sort of problem there, not consent. But you specifically disavow such a theory. Your Honor, there are sort of two minimum context tests, as you just alluded to. There's sort of the general jurisdictional issue, and then there would be the specific minimum context jurisdiction. Frankly, I think the cases sometimes slide between the consent issue and the specific jurisdiction issue. Well, I actually think the two cases you're relying on is really minimum context specific jurisdiction. And they are. It's not consent, because – I mean, you can have fictional consents, but at some point it gets so fictional that it's just not consent. I agree with you. And I think that's why sort of the specific jurisdiction slides into the consent issue sometimes in some of the opinions. And all we are saying is that the general full-blown minimum context, the sort of generalized doing business, generalized reaching out into the jurisdiction analysis doesn't apply. But some of the cases that do use a minimum context analysis in the specific jurisdiction context, I think, do speak to this issue. You know, and we do believe that when you have litigants who have sort of reached out to the jurisdiction of this court and elected to obtain rulings on the merits, it is entirely consistent with due process to say – It's hard for me to understand somebody who's being sued as a defendant as having reached out to the jurisdiction of the court just because they don't offer as a reason to dismiss the jurisdictional question. Well, that's a fairly specific election, I think, Your Honor. Well, it's a specific election, but they haven't reached out. They weren't in court because they elected to go to court. They were sued. But nothing could be more involuntary than being a defendant in a lawsuit. They clearly did not file the actions, and in that sense, we don't have a case directly on point, certainly. They are not plaintiffs in an action. They did have a jurisdictional defense that they affirmatively elected to waive. They did choose to litigate on the merits. They did obtain rulings on the merits that are certainly of precedential value to them in subsequent cases involving the same issues. So I do believe that they seized benefits by electing to waive their personal jurisdiction defense, that when combined with the limited ability that Law 364 gives us to try to opt out of Nicaragua that's not being accepted down there, makes the exercise of jurisdiction over those particular defendants certainly particularly fair. In addition, Your Honor, the appellees raise questions of rightness. And some of the Court's questions really go to the question of, well, do we have a problem here? Is this issue right? The issue of rightness as divorced from the issue of personal jurisdiction is obviously for the district court in the first instance. And we believe the appropriate course with respect to the jurisdiction issue is to conclude that under Law 364, the affirmative election carried with it a burden of returning to the United States if we exercise our own limited rights under Law 364, and that these defendants are subject to the jurisdiction of the United States. And whether the Court should exercise its discretion to hear our declaratory judgment claims is plainly something for the Court to decide in that case. You're really asking us to interpret the Nicaraguan law as imposing a burden on Nicaraguan claimants. I don't think there's really an interpretation issue at all. That is, the law plainly says we must subject ourselves to the jurisdiction of the United States. It doesn't say a word about the plaintiffs. It says what you have to do. Okay. That's correct, Your Honor. You're asking us, if you don't like interpret, you're asking us to read the Nicaraguan law as imposing a burden on Nicaraguan citizens that it doesn't mention. Yes, although I think the flip side of our obligation is that burden. I mean, if we have an obligation under that statute. Now you're explaining why we should retake it. But what I'm saying is that's the task you give us today, is to say that we should read Nicaraguan statute as imposing an obligation on Nicaraguan citizens that is not contained on the face of the statute. I think it is certainly implied in the statute, but I agree with you there is not a specific, and I don't think the Nicaraguan legislature could do so. Let's say we do that. Where does that get you? Let's say they in fact have that obligation under the Nicaraguan law, which is a stretch, but let's say we say that the, how does that help you? Well, it gives us a great deal, Your Honor. I mean, it gives us the ability to do two things. First, to have an adjudication if the district court agrees that it's appropriate to exercise the jurisdiction on the question of whether judgments entered against us are enforceable in the United States. We are under substantial pain of that. I'm sorry. How did you get there? That is one of the claims at issue. There have been judgments entered against us. You're not getting to the merits, but we're not nowhere near the merits. I agree. Let's say, in fact, that we interpret the statute as placing upon them an obligation to do this. It's an obligation they have not, in fact, complied with. No, I think the obligation that we suggest exists in the statute is if we exercise our opt-out rights, they are obligated to essentially, to honor our choice to litigate in the United States. It's not an obligation. I don't believe. So let's say, in fact, that's what it is. They, in fact, have this obligation under Nicaraguan law. And what does that give you in terms of personal jurisdiction? They, in fact, haven't done anything. They, in fact, have not complied with Nicaraguan law as you would read it. So I don't quite understand how that helps you. Maybe you can go to Nicaragua and hold them in contempt or whatever it is that they do in Nicaragua when people don't comply with the law. Maybe you can get them arrested, for all I know. But how does that help your argument here that this amounts to consent or minimum contact? You know, whatever you want to, whichever route you want to go. I understand your question. And I don't think we are arguing. I prefer an answer to, if I may understand. I understand. Excuse me. Just give me an answer. How does that help you? The reason it helps us is we are not urging that the obligation itself gives rise to consent. What we are urging is that by seizing the benefits of the law, by electing its protections, they also tacitly consented to our exercise of the sole remedy we have under the law, which is the return to the United States. By filing the lawsuit in Nicaragua was the consent. Exactly. It is the act of affirmatively electing that remedy in Nicaragua. They could have done other things. They could have sued under the civil law of Nicaragua. In Delgado, in fact, the Court referenced the civil law remedies that existed in its decision back then. And there have been decisions, excuse me, there have been lawsuits filed under the civil law, not under Law 364. So they had other options. And it's our position that by electing this one. Do you think we should certify this to the Nicaraguan Supreme Court? No. This Court obviously has jurisdiction over this matter. And our entire effort is to avoid that legal. How about the California Supreme Court? No. They occasionally accept something. For better or for bad, at least as to this issue, we think it's properly before this Court. If there are no further questions, Your Honor, I thank you. Thank you, counsel. Good morning. Howard Miller for Appalese Calderon et al. This is a perfectly straightforward and simple issue of personal jurisdiction. The plaintiffs here have not claimed there's any domicile, any presence. They solely argued consent. In fact, the Court's question about whether consent goes over into minimum contacts, we had raised the fact that there were no minimum contacts in this case. And in their reply brief, the defendants clearly and absolutely said, plaintiffs have never made a minimum contacts argument because we had raised there no minimum. And they said it's a red herring. That's what they said. It's a red herring. We've never made a minimum contacts argument. The reason I ask the question is that, as I say, I think there was a glimmer of a theory there that they had not thrown it over because you say in your brief, unlike what the district court said, that it wasn't a mistake that you appeared in the other case. That it was a choice because you thought that you could win. So essentially, instead of simply not appearing, you decided to get something which was a judgment in your favor. The judgment in your favor being of some use to you. You could have simply said, sorry, we're not going to show up, and you made a conscious choice not to do that. And I'm not entirely sure that the plaintiff-defendant difference would, you know, override everything under those circumstances. Oh, the word glimmer did cause me some concern when you said it. But I also heard when you questioned counsel on Dole v. Gutierrez, that other case, and what it was about, and he went through a long explanation about it, raised other issues of ripeness. He clearly said in describing Dole v. Gutierrez, the case he relied on later in his argument, that the factual merits are substantially different in that case. I believe I got that quote exactly in his argument, in his answer on describing Dole v. Gutierrez. So I don't think any of the cases support the fact that a defendant who's brought in and is a defendant in one case consents to jurisdiction. Perhaps it was the same parties. I mean, the other thing here is that it wasn't the same parties. It wasn't the same parties. They weren't the parties. The cases that are cited are all cases where a person, a litigant purposely availed themselves by becoming a plaintiff. That clearly is not this case. So what about the argument that by filing suit under this law in Nicaragua, they've essentially consented to let a defendant there, a defendant that claims here, make the election which the law entitles them to. And so by filing under that law as opposed to some other law, general civil law, your clients have consented to abide by the election that Dole made. There's only one problem with that argument. That's not what the statute says. The statute on its face is referring to companies. The language of the statute is, companies that within 90 days of being given notice of this law by plaintiff and service of process in the corresponding channel have not deposited the sum required, must subject themselves unconditionally to the jurisdiction of the courts of the United States. This by its terms only applies to those who are defendants. They must subject themselves to the jurisdiction of the United States if the Nicaraguan plaintiffs choose to come to the United States. But there is nothing in the statute that implicates or references plaintiffs in Nicaragua at all. Well, it's just one of those questions of statutory interpretation. And it's not maybe the most clearly written law, but certainly one could say, well, we certainly read it the way Board of Counsel suggests. What it's saying is, look, if you get sued under this, you have an election. You can pay the money here and up here, or you can choose not to pay the money here, in which case you can defend there without the benefit of these defenses. And, you know, it's unspoken, but it's implicit that the plaintiffs don't have to follow you there and take advantage of that option. Why is it a perfectly plausible way of reading the statute? I don't think it is implicit.  when you look at the text of the language, it really doesn't permit that interpretation, because it only refers to companies. Also, it's impossible not to mention the irony that, as far as the plaintiffs here are concerned. But what does that dangling phrase mean? If they don't pay, they have to submit themselves to the jurisdiction of U.S. court without the defense of foreign agreements. What is the predicate for that? They must be sued in the United States. If they are sued in the United States. Why doesn't that, isn't that sort of an implicit term of the legislation? Because it turns what arguably, what is a right of the Nicaraguan plaintiffs, into a duty of the Nicaraguan plaintiffs. It interprets the statute to say, you consent to the jurisdiction of the United States, the Nicaraguan plaintiffs therefore have the right to sue. I've seen bigger leaps in statutory construction. It sounds perfectly plausible. Why would that be a bad interpretation? Why is it not a way of making sense of the whole scheme? It really doesn't make any sense to say, you're going to submit to this, and then not have such an automatic shift of litigation. It makes perfect sense to say, look, you can litigate here and pay this, or if you don't pay here, we're going to shift the whole show to the United States. I don't think it says shift the whole show. The way I think it is. I understand it doesn't say that. It says something in Spanish, which loosely translates, you know. Yes. This is a translation from the appellant's brief, we want no more. I think what it says is, that when the defendant... It would make no sense, if there is no shifting of the litigation over. It makes no sense to say, you know, you pay the money, or else you submit to jurisdiction here, unless it is to say, look, you pay the money here, litigate here, in which case you pay a bond, or we're going to take the whole show over to the United States, in which case you have to submit there without raising any defenses. But I think what it does, it doesn't shift the whole show, and that's really the issue. What it does is, it now gives the Nicaraguan plaintiffs the option, the right. All that they have is a right, but no duty to come to the United States. We're dealing here with a translation once again, and they, therefore, hesitate to get too attached to the language, but the language certainly sounds as to be referring to defendants. I mean, it talks about subjecting themselves, which sounds like a defendant, and it talks about expressly waiving the defense of form nonconvenience, which sounds like a defendant. But I don't know what the Spanish actually says. I don't know the Spanish either, but that's why I'm reading from the appellant's brief, the language that they used in the appellant's brief. I think fairly this gives the Nicaraguan plaintiffs the option, and the additional irony here, of course, is that the plaintiffs here and appellants are quite content, despite the corruptness of the Nicaraguan government, and the corruptness of Special Law 364, to insist on the application of Article 7 as they interpret it. As the district court said, there's a little cherry picking here. I think when we come down to the issues of personal jurisdiction, Your clients are not cherry picking? What? They're doing the only cherry picking around here? Your clients are not cherry picking? I think maybe we can stipulate that all clients attempt to do that. There we go. But I do think... So the charge of another side's cherry picking is always amusing. I find it as amusing as their attempting to take advantage of this. But I think what we're talking about here is a question you ask. What does it get them? Judge, because it's going to say, what does it get them? What does it procedurally mean? We still have the actions down in Nicaragua. What they're saying is that not only do the plaintiffs have the duty to come here, but they can proceed against them even if they haven't. What does it get them procedurally? These plaintiffs have chosen to sue in Nicaragua. They go one step further. They say, you know, if we say we're coming to the United States, it's exclusive. You can't stay in Nicaragua. There's nothing in this statute that comes close to saying you can't stay in Nicaragua. Nothing at all. It's... I think it is a stretch. I understand the argument. I understand the need to make the argument. But I think we're coming down to personal jurisdiction. And it's important to see this in the context of personal jurisdiction. One of the reasons they didn't make the minimum contacts arguments as minimum contacts is because I think there was an intuitive understanding in terms of the way the argument was phrased, that nothing that happened in this case could come within the minimum contacts umbrella. So the word consent was used. But consent relies on two very, very thin pillars, which are interpreting the statute that refers only to companies in a way that imposes a duty on the Nicaraguan plaintiffs, and secondly, relying on an appearance as a defendant in another case involving other parties on issues that they themselves have said are not factually similar. If the Court has no further questions, I think we've exhausted the... Thank you, Mr. Miller. That's for sure. Okay. All right. If there's nothing further, the case will be submitted. The Court will stand in recess for the day. Thank you.
judges: Reinhardt, Kozinski, Berzon